James E. Mulcahy, J.
Petitioner has applied for an order in the nature of a writ of error coram nobis to vacate and set aside a conviction for the crime of murder in the first degree wherein the jury recommended life imprisonment. On May 8,1946 the defendant was sentenced to life imprisonment by the late Judge Donnellan.
The petitioner asserts that he was deprived of due process of law during his trial as a result of perjured testimony given by the witness John Graznando. Petitioner relies on and attempts to bring his case within the facts discussed in the following cases: Napue v. Illinois (360 U. S. 264); People v. Savvides (1 N Y 2d 554). In my opinion the facts in People v. Savvides (supra) are much stronger. The alleged perjured *773 testimony concerns Gramando’s answers to questions put to him on cross-examination by defendant’s trial counsel as to whether he had been promised any consideration for his testimony as a witness for the prosecution and the failure of the prosecution to correct the alleged perjury before the court and jury. A hearing as to these allegations has been concluded, the petitioner being present but not testifying.
The background of the case is material to a proper understanding of the issues involved. In 1941 one Vera Rubin was murdered during the course of a holdup in a bar. It was an unsolved homicide until June, 1945 when Gramando was arrested for the murder of John Spagna. About the same time Gramando’s wife was arrested for possession of a gun without a license. Gramando had admitted to the police that he had killed Spagna and thereafter made the same admission on June 15, 1945 to the District Attorney in charge of the investigation, Mr. Vincent Dermody. On June 20, 1945 Gramando gave information to Dermody regarding the Rubin killing which led to the instant indictment.
Gramando was indicted for murder in the first degree on June 27, 1945 for the Spagna killing. At the same time the gun charge against his wife was dismissed by the Grand Jury. On August 2, 1945 the defendant Romeo, Gramando and two others were indicted for murder in the first degree for the Vera Rubin homicide. On February 26, 1946 an order was entered severing the trial of the defendant Romeo from the other defendants. Romeo’s trial was started on April 8, 1946 and Gramando testified as a witness for the prosecution. The prosecution was conducted by Assistant District Attorney George P. Monaghan, assisted by Assistant District Attorney Vincent Dermody. Gramando involved himself and Romeo, and the others as participants in the Rubin killing. After the conviction, Romeo made a motion for a new trial bottomed on a charge of perjury by Grumando and other witnesses, but the motion was denied after a hearing. The conviction was affirmed on appeal (273 App. Div. 891).
The issue at the coram nobis hearing was whether the witness Gramando lied with the knowledge and connivance of the prosecution to the jury in the instant case when he said that he had been promised no consideration for appearing as a witness. Gramando stated, in substance, that Dermody had told him that his wife would be let out on the gun charge and that both Assistant District Attorneys Dermody and Monaghan had told him not to worry about the homicide cases. Nathan Kestnbaum, the petitioner’s attorney at the coram nobis pro *774 ceeding, testified that during the course of a telephone conversation with Dermody in August, 1960, the latter told him that the only promise that he had made to Gramando was that Ms wife would not be prosecuted on the gun charge. Dermody testified that he had told Gramando that “we” would do everything “ we ” could to get his wife out on the gun charge, hut that he had made tMs representation for information concerning an unsolved murder charge and not in exchange for Gramando’s becoming a witness on the trial. Dermody denied that he had ever made any promise to Gramando, either directly or indirectly, in return for his testimony against the defendant Borneo. Dermody recollected that he had told Gramando prior to the time the latter testified before the Grand Jury and before the trial that he would make no promises whatsoever to him regarding the disposition of the charges against him. Monaghan likewise denied maMng any promise to Gramando and testified that he always told Gramando that he was on his own. Monaghan further stated that it was only after the trial had been completed that he told Gramando that he would advise the court of Gramando’s testimony in the Borneo case.
In a coram nobis proceeding the burden of proof is upon the petitioner to establish Ms contentions clearly and convincingly and by a preponderance of the credible evidence (People v. Chait, 7 A D 2d 399, affd. 6 N Y 2d 855). The guilt or innocence of the defendant is not in issue in this proceeding (People v. Fisher, 23 Misc 2d 391, 402). The issue is whether the requirements of due process of law were met during the defendant’s trial. As stated in Mooney v. Holohan (294 U. S. 103, 112): “ That requirement, in safeguarding the liberty of the citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice wMch lie at the base of our civil and political institutions. Hebert v. Louisiana, 272 U. S. 312, 316, 317. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.”
However, the law likewise holds that perjured testimony given during a trial, without the knowledge or connivance of the prosecution, does not give rise to coram nobis relief (People *775 v. Oddo, 300 N. Y. 649, Frank, Coram Nobis, and 1960 Supp., p. 27, n. 9, p. 64, n. 15).
In reviewing the evidence I find that Gramando’s testimony at the hearing is unworthy of belief. This man is an admitted and convicted killer in two separate crimes, a person who has been convicted of petit larceny and robbery in the first degree, and who escaped from custody while being held as a material witness in an unrelated homicide case. He has spent approximately half of his life in jail and is presently on parole. His testimony regarding the alleged promises of consideration for himself in connection with the Rubin and Spagna killings was not definite. In fact, he testified that he could not pinpoint what was said between Dermody and himself on June 20, 1945. His recollection of the alleged promises made by Monaghan and Dermody likewise followed the same pattern and he attributed his inability to particularize to the passage of time. Here is a man who testified on the original trial (Record on Appeal, p. 313, fol. 939) that he would tell the truth even if it meant going to the electric chair and now comes along and testifies under oath that he made Romeo a participant in the Rubin killing to satisfy a personal grudge. The basis for the grudge is that Romeo “ made a pass ” at Gramando’s wife at one time. Gramando claims now that he wants to rectify the mistake. It is worthy of note that two police officers who were present in the bar at the time of the holdup implicated Romeo in the murder of Vera Rubin.
In contrast with the above testimony I find that Dermody and Monaghan gave clear and definite testimony regarding Gramando’s participation in the Romeo trial. Both denied having made any promises of consideration to Gramanido regarding the Rubin or Spagna killings. Dermody admitted that he had told Gramando that he would try to do something about the gun charge pending against Mrs. Gramando. This issue will be taken up later in this opinion. Dermody recollected that he had specifically told Gramando prior to the latter’s appearance before the Grand Jury that he was making no promises to him and again repeated that to him before he testified in the Romeo trial. Monaghan said that he had told Gramando several times that he was on his own. .
During the Romeo trial, defense counsel asked Gramando whether any promise had been made by the District Attorney for his appearance as a witness and he answered in the negative. At one period during the cross-examination (Record on Appeal, pp. 296-297, fol. 886 et seq.) when defense council was ques *776 tioning Gramando concerning the fact that he had not been prosecuted, the following colloquy appears :
“Mr. Monaghan: Your Honor, may we get the record straight! In the way these questions are framed, he says, ‘ You are not being prosecuted He isn’t being prosecuted today.
“ Mr. Cosentino: Well, he was not prosecuted.
“ Mr. Monaghan: There hasn’t been a promise made of any kind.
11 Mr. Cosentino: Put it on the record that you are going to prosecute him.
‘ ‘ Mr. Monaghan: I will put it on the record right here that a single promise —
“ Mr. Cosentino: Put it on the record that this stool pigeon wouldn’t be tried for murder in the first degree for the killing of Vera Rubin—
“Mr. Monaghan: Not a single promise ever made to this man—”.
During the course of summation by the attorney for the defendant Romeo, he again stated that some consideration must be forthcoming to Gramando for his testimony. (See Record on Appeal, p. 607, fols. 1820-1821.) So the jury had for consideration whether any promise was made and what effect if any it might have on Gramando’s testimony.
Regarding the events resulting in the dismissal of the gun charge by the Grand Jury against Mrs. Gramando, I find that whatever agreement was made between Gramando and Dermody was a matter of record and disclosed to the trial jury in the Romeo case. I accept Dermody’s testimony that he made the arrangement, not as an inducement for Gramando’s testimony at the Romeo trial, but solely to obtain information concerning an unsolved homicide. Gramando’s testimony showed that he was extremely anxious about his wife and admitted that the gun was his, and was more than satisfied to exculpate her and as a result did not drive any bargain regarding his own safety. It must be borne in mind that the case against Mrs. Gramando was presented to the Grand Jury within days after her arrest and no true bill was found.
The trial record (Record on Appeal, p. 293, fol. 877 et seq.) discloses the following:
“ Q. Now around that time your wife was arrested for having in her possession a loaded revolver? A. That’s right.
“ Q. Is that correct? A. That’s right.
“ Q. And she was arrested, charged with possession of a firearm? A. That’s right.
*777 “ Q. And she went into the Magistrate’s Court, and she was held for the Grand Jury? A. That’s right.
“ Q. Is that right? A. That’s right.
“ Q. Now isn’t it a fact that between the time that she was held by the Magistrate to await the action of the Grand Jury and the day that the case was presented to the Grand Jury, you went to the District Attorney’s office? A. That’s right.
‘ ‘ Q. And you told the District Attorney that ‘ If my wife is prosecuted I will not testify ’? A. I didn’t say nothing of the kind.
“ Q. You said something about your wife being arrested? A. That’s right.
“ Q. You asked the District Attorney to help her, didn’t you? A. That’s right.
“ Q. Yes. And your wife’s charge of possessing a loaded firearm was dismissed by the Grand Jury of this County? A. That’s right.
“ Q. You were promised that if you testified in this case you wouldn’t be prosecuted for the killing in this case, is that correct? A. You know more than me.
“ Q. I know more than you? A. Yes.
• “ Q. Perhaps I do. A. You’re smarter than I am, but you know more than me.
“ Q. No one ever told you that? A. Nobody told me anything.
‘1 Q. You just came here voluntarily, without any promises, without any consideration? A. That’s right. The only thing I hoped was that they would take my wife out, that’s all.”
I find that no promises or representations were made by either Assistant District Attorneys to Gramando regarding the ultimate disposition of the two homicide cases pending against him in exchange for his trial testimony. When Monaghan stated at the trial that no promises of any kind were made (Record on Appeals, pp. 296-297, supra) such remarks were made by him in relation to prosecutions of pending indictments against Gramando for the killings of Spagna and Rubin.
The facts in this case as developed on the hearing show that, unlike Napue v. Illinois (supra) and People v. Savvides (supra), there was no attempt either to suppress the truth or to permit perjured testimony to go unchallenged by the District Attorney. There is no showing, aside from the statement of a self-confessed perjurer, that the testimony he gave on the trial regarding the alleged promises was false.
The court would not hesitate to vacate a judgment of conviction where it finds that there exists a clear and convincing case of a lack of due process of law. The petitioner was given *778 the opportunity by judicial review to effectively challenge his conviction purportedly obtained in violation of due process. He has failed to meet the burden of proof imposed on him by law. The motion is denied.